<u>NOT FOR PUBLICATION</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| WAYNE HENRY HARRIS,<br><br>        Plaintiff,<br><br>            v.<br><br>CAROLYN W. COLVIN,<br>Commissioner, Social Security<br>Administration,<br><br>        Defendant. | Civil No. 1:13-CV-7130-RMB |

Appearances:

Melissa Cordner Lewis
South Jersey Legal Services, Inc.
745 Market Street
Camden, NJ 08102
      Attorney for Plaintiff

Heetano Shamsoondar
Office of the U.S. Attorney
District of New Jersey c/o of General Counsel
26 Federal Plaza
Room 3904
New York, NY 10278
      Attorneys for Defendant

**BUMB**, United States District Judge:

   Plaintiff, Wayne Henry Harris, ("Plaintiff") seeks judicial

review pursuant to 42 U.S.C. § 405(g) of the final decision of

the Acting Commissioner of Social Security (the "Commissioner")

denying his application for Supplemental Security Income

("SSI"). For the reasons set forth below the court will vacate the decision of the Administrative Law Judge and remand.

## I.   Background

### a. Procedural Background

On August 18, 2010, Plaintiff filed an application for SSI alleging a disability with an onset date of March 31, 2007. (Administrative Record "R." 197).  His claim was initially denied on January 29, 2011, and upon reconsideration on April 15, 2011. Thereafter, a written request for a hearing before an Administrative Law Judge ("ALJ") was filed on March 26, 2012, which also amended the initial disability onset date to October 26, 2010. On April 10, 2012, Plaintiff, represented by an attorney, appeared at the hearing held before Honorable Judge Frederick Timm. (R. 33).  On May 25, 2012, the ALJ issued a decision denying Plaintiff's application (R. 16-27), which became the final judgment of the Commissioner of Social Security after the Appeals Council denied Plaintiff's request for review on September 27, 2013.  Pl.'s Br. at 6.  Subsequently, Plaintiff commenced this action, requesting judicial review pursuant to 42 U.S.C §405(g). Id.

### b. Hearing Testimony

Plaintiff was born October 20, 1964. (R. 110). He completed eighth grade in special education, but eventually got his GED.

(R. 41).  Plaintiff resides with his mother and father. (R. 41).
Plaintiff's last previous employment was with Ram Jeep in 2007
as a laborer, which consisted of him carrying wood, three to
four times a day. (R. 42). Plaintiff accredits his lack of
attention to his time in prison for nearly a decade. (R. 42).
Plaintiff testified to having flashbacks of an officer beating
him senseless. (R. 42). He stated that he was raped in Eastern
Jersey Shore Prison and mentioned other violent attacks by
fellow inmates. (R. 43). He also claims that he only gets about
two to three hours of sleep nightly because he wakes up in a
cold sweat after dreaming about him still being in prison. (R.
60).

   During the hearing, Plaintiff testified about his physical
and mental health. In particular, Plaintiff testified that he
could not work around other people without becoming aggressive
or violent, which is why he no longer worked at his previous
employment. (R. 44). Plaintiff testified that he would have hurt
one of his coworkers. (R. 44). Plaintiff attributed his memory
loss to brain traumas, which he said continues to occur because
of a car accident in 1995. (R. 48). Plaintiff testified that he
has had a problem focusing in his previous employment because he
has problems remembering what someone might ask him to do. (R.
48-49).  During his testimony, Plaintiff read off a list of
prior diagnoses including: "bipolar, major depression disorder

3

recurring, post-traumatic stress disorder, psychotic episodes, long and short-term memory loss, anxiety, [and] encephalomalacia . . . ." (R. 55).

Plaintiff told the ALJ that he could not maintain any of his past employment "[b]ecause of [his] cognitive ability to retain what orders or knowledge and [him] being violently aggressive towards others and the flashbacks that [he] still ha[s] from prison." (R. 52). Plaintiff also testified that he cannot get on public transportation because there are too many people making him feel trapped, and if someone touches Plaintiff, he becomes aggressive (R. 56).

During the hearing, Plaintiff also complained of post-traumatic stress, and claimed that the variety of medicine he is taking does not help. (R. 61). Plaintiff testified that his lack of judgment caused him to commit a robbery in 2001, which led to his incarceration in 2002. (R. 62). Plaintiff testified that his loss of memory makes him forget appointments, his thought in a middle of a sentence, or even where he places food or drinks at times. (R. 64). His attention span is about a minute. (R. 65). He also has a problem with being in large crowds. (R. 67). His panic attacks are overwhelming and his anxiety makes his blood pressure sky rocket. (R. 69). Plaintiff stated that his panic attacks and other symptoms are still present even when he takes his medication as prescribed. (R. 71).

Plaintiff testified that he has been depressed for the last ten years, causing him not to be able to do anything, and only eating once a day. (R. 74). Plaintiff also discussed the fact that he drags his left foot due to an injury to the right side of his brain. (R. 78). He stated that he liked to spend time alone, repairing his bike, doing yard work, and listening to symphonic music. (R. 83).

After the Plaintiff testified, Mr. Cezzoli, the Vocational Expert ("VE"), determined that Plaintiff's past work history was primarily unskilled in nature. (R. 85). The VE also found that the line of work Plaintiff described was heavy exertion. (R. 85). The VE then determined that someone limited to light exertion could not perform the previous laborer positions of the Plaintiff. (R. 86).

When the ALJ gave a hypothetical to the VE providing the following parameters:

> A hypothetical individual born on October 20, 1964. He's thus a younger individual under Social Security rules. He does have a high school education. As the single past relevant work occupation you've identified, is generally capable; never to climb a ladder, rope scaffold; avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity and environmental irritants and is further limited to unskilled tasks to goal oriented rather than production pace tasks; no significant interaction with the general public, even by telephone; no more than occasional interaction with supervisors and co-workers, and requires a stable work place, meaning few, if any changes of setting, processes and tools.

(R. 86).   In response to the hypothetical as posed, the VE
stated that there were other occupations that the hypothetical
individual could perform, (R. 87), including Produce Weigher, a
Garment Folder, or a Sorter. (R. 87-88).

The VE was then questioned by the Plaintiff's attorney.
The attorney provided the VE with hypothetical limitations
including an inability to behave in an emotionally stable manner
and repeatedly leaving his post. (R. 91).   In response to the
limitations posed by the Plaintiff's attorney, the VE stated:

> if they did [sic] that quite frequently to the point where
> it affected them where they were not performing at perhaps
> at an 80-percent capacity, meaning they were not [sic]
> occasionally 2.6 hours out of an eight hour day were not
> performing their task because of behavior issues, that in
> itself would preclude all full-time competitive employment
> on a substantial basis.

(R. 92).   The VE stated the same conclusion applied in response
to the Plaintiff's attorney presenting another hypothetical of
an individual who, several times a month, was "verbally
inappropriate" to other people, or would react in an extreme
manner even if just touched on the shoulder. (R. 92).

The VE further stated that someone who could not perform
one or two step instructions would be precluded from all full-
time competitive employability on a sustained basis. (R. 93). An
individual who could not pay attention long enough would have
the same result. (R. 93)  The VE clarified that based on the
testimony given by Plaintiff at the hearing with regard to how

6

he handles stress, that "it would appear that based on the testimony, given how he testified, it would actually preclude all competitive employability on a sustained basis." (R. 94). The VE told the ALJ that his conclusion was based on Plaintiff's "testimony [in which he] indicated that when individuals would make statements that he felt were derogatory in nature that the reaction was excessive to the point where that behavior was displayed on a continuous and persistent basis." (R. 95).

   c. The ALJ's Decision

   Applying the requisite five step analysis,[1] the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since August 18, 2010, the application date. (R. 18). The ALJ also found that Plaintiff has severe impairments including: hypertension, headaches, major depressive disorder, and post-traumatic stress disorder ("PTSD"). (R. 18). As to these impairments, the ALJ found that they caused more than a minimal restriction of Plaintiff's ability to perform work related activities and were, therefore severe. (R. 18). However, the ALJ found that Plaintiff's polysubstance abuse, while in remission, did not cause more than a minimal limitation in the Plaintiff's ability to perform basic mental work activities and was therefore not severe. (R. 19).

---

[1] Described on pages 18-19 infra.

Relying on these findings, the ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, A subpart P, Appendix 1 (20 C.F.R §§ 416.920(d), 416.925 and 416.926). (R. 18).  He further found that the severity of the claimant's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listing 12.02, 12.04 or 12.06. (R. 19).  In making this finding, the ALJ considered whether the "paragraph B" criteria are satisfied, meaning that mental impairments must result in at least two of the following: "marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration.  A marked limitation means more moderate but less than extreme." (R. 19-20).

The ALJ determined that in the activities of daily living, and social functioning, the Plaintiff has a "moderate restriction," (R. 20), noting that Plaintiff was appropriately dressed and groomed and had reported having a girlfriend.  The ALJ also found that Plaintiff has moderate difficulties with regard to concentration, persistence or pace. (Id.)

The ALJ further found that there was no evidence establishing the "paragraph C" criteria, meaning that under listings 12.02 and 12.04, Plaintiff has not shown a medically documented history of chronic organic mental disorder or affective disorder of at least 2 years' duration.  (Id.)  With respect to the 12.06 listing, Plaintiff had not shown a complete inability to function independently outside the area of his own home as supported by the fact that "[he] has had little psychiatric or mental health treatment since the alleged onset date."  (R. 20).

Based on his review of the record, the ALJ determined that Plaintiff had the RFC "to perform light work as defined in 20 C.F.R. § 416.967 (b) except he is unable to climb ladders, ropes, or scaffolds, and he must avoid concentrated exposure to extreme cold, heat, wetness, humidity and environmental irritants." (R. 20-21).  The ALJ also noted that Plaintiff would be further limited to "unskilled tasks and to goal-oriented rather than production-paced tasks" and "can have no more than occasional interaction with supervisors and co-workers, no significant interaction with the public, even by telephone, and he requires a stable workplace, with few, if any changes of setting, process, and tools." (R. 21).

In making this determination, the ALJ noted that the mental health records of the Department of Corrections showed that

Plaintiff was on the mental health special needs roster between 2002 and 2004 for major depression and anti-social personality disorder and was treated with medication and counseling. (R. 21).  The ALJ noted that the records did not document the violent attacks, beatings or the prolonged administrative segregation as claimed by Plaintiff, and that on August 2, 2010, Plaintiff "came down to make mental health [at the prison] aware that social security might be contacting the mental health unit for information" and he was concerned that he had not been on the mental health roster since 2004.  (R. 21-22).

The ALJ noted that the mental health records showed Plaintiff had been "stable and repeatedly assessed as calm and relaxed with no overt evidence of distress or impairment." (R. 22).  The records showed that Plaintiff had denied having problems and the ALJ found that there was "no readily observable signs of tension or agitation" to support Plaintiff's claims of distress from anxiety. (R. 22).

The ALJ determined that Plaintiff had given conflicting statements to different medical professionals when providing his past psychiatric history, and noted that Plaintiff was given no work restrictions after his examinations from the Department of Corrections on February 6, 2009 and April 13, 2010. (R. 22).  The ALJ also found that when Plaintiff was given an MRI, at Bayside State Prison in July 11, 2003, the results showed mild

10

cerebral atrophy with "a small area of increased signal in left occipital lobe probably due encephalomalcia." (R. 618). The electroencephalogram test ("EEG") that was conducted on August 13, 2003 showed "no evidence of a focal or epilepiform abnormality." (R. 618).  South Jersey Healthcare emergency room records showed Plaintiff sought care for flash burns to his eyes while welding on April 10, 2011. Plaintiff was breathing regularly, denied any shortness of breath, and there was no musculoskeletal deficits. (R. 618).

The ALJ relied, in part, on the medical report of Kim Arrington, Psy.D., a state clinical psychologist, who performed a consultative examination on Plaintiff in November 2010. Plaintiff was able to recall 3/3 objects immediately, 0/3 after 5 minutes and did not know the current president.  Dr. Arrington noted that Plaintiff's attention and concentration appeared to fluctuate, possibly due to depression and cognitive symptomatology.  Dr. Arrington found Plaintiff could understand simple instructions and directions vocationally and perform simple tasks independently and could maintain a regular schedule.  The ALJ accorded "great weight" to these opinions, finding them in accord with medical evidence.  (R. 23).  In her report, Dr. Arrington "raises the question of psychiatric problems significantly with the claimant's ability to function on a daily basis." (R. 23).  The ALJ noted that he gave "little

11

weight" to this portion of her opinion as "it is not consistent with the medication evidence, Dr. Burakgazi's findings (3/3 recall after 5 minutes) and Bayside State Prison mental health records (knows current president). (R. 23).

After consideration of the above evidence, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (R. 23). Referring to the records from the Cumberland County Guidance Center, the ALJ noted Plaintiff has had panic attacks since release from prison and has been prescribed anti-anxiety medication with very limited therapy and medication monitoring every three months to assess progress. The ALJ found this to be limited treatment in light of the severe symptoms the Plaintiff alleges. (R. 23).

The ALJ found that while Dr. Burakgazi diagnosed Plaintiff with memory disturbance, this was due in part to Plaintiff's subjective report and social history and prior to his receipt of the MRI results. (R. 23). Dr. Burakgazi found Plaintiff had very good calculation skills and could remember 3/3 after 5 minutes. The ALJ further stated that Plaintiff's claimed cognitive and memory problems were not credible because

12

Plaintiff was able to list "all of his past anti-psychotic drugs by memory by brand and generic names, accurately and completely." (R. 24).

The ALJ determined that Plaintiff was not wholly candid because Plaintiff said he got in a car accident in 1996 (which caused Plaintiff brain damage), but he was able to still receive his GED and obtain a Bachelor's degree in Theology. (R. 24). The ALJ found that to be in conflict with testimony at the hearing when Plaintiff said he was in special education up to the eighth grade with no post high school training. (R. 24).

Two reports by Frank Stafford, a nurse practitioner from the Cumberland County Guidance Center, were also reviewed. In the first report, dated June 2, 2011, he stated that claimant is unable to participate in state welfare work due to major depression and anxiety disorder. Stafford further stated that Plaintiff could not work full-time, but gives no treatment information or specific limitations. (R. 24). The ALJ found that Stafford's January 19, 2012 report marks all categories as "poor" without rationale. Instead, Stafford notes as support for his findings: "psychiatric assessment" and "past history." Id. The ALJ then stated that Stafford "does not have the credentials to give a psychiatric assessment, and his assessment is inconsistent with the treating records and the claimant's activities of daily living," noting that Plaintiff seeks care

primarily when he needs welfare paperwork done and has had little therapy otherwise, with only three sessions in 2010, five in 2011 and one in 2012. (R. 24).

In contrast, the ALJ found the January 26, 2011 state agency reviewing psychological consultant report prepared by Dr. Jusino-Berrios to be credible. (R. 24).  The report stated that the findings of Dr. Arrington of PTSD, Cognitive Disorder and possible Dementia are not supported by preponderance of evidence and that, instead, the longitudinal evidence supports a moderate condition. Id.  The report found that Plaintiff is able to understand, remember and execute simple instructions and have adequate interactions with others. (R. 25).  The ALJ noted that a second state psychological consultant affirmed these opinions and that they are more consistent with the record as a whole. (R. 25)

After making his determination, the ALJ concluded that Plaintiff had no past relevant work. (R. 25).  Considering the claimant's age, education, work experience and RFC, the ALJ found that there are jobs that exist in the national economy that Plaintiff can perform.  In making this finding, the ALJ relied on the VE, stating that based on the claimant's age, education, work experience and RFC, "the individual would be able to perform the requirements of representative occupations including Produce Weigher, Garment Folder, and Sorter, which all

14

represent a significant number of jobs in the national and regional economies. (R. 26). Based on these conclusions, the ALJ determined that Plaintiff was not disabled and therefore Plaintiff's application was denied.

## II.  Standard of Review

A reviewing court must uphold the Commissioner of Social Security's factual findings if they are supported by "substantial evidence," even if the court would have decided the inquiry differently. 42 U.S.C. §§405(g), 1383 (c)(3) <u>Knepp v. Apfel</u>, 204 F.3d 78, 83 (3d Cir. 2000); <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)(quoting <u>Cons. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)); <u>Plummer v. Apfel</u>, 186 F.3d 422, 427 (3d Cir. 1991). Where the evidence is susceptible to "more than one rational interpretation, the Commissioner's conclusion must be upheld." <u>Ahearn v. Comm'r</u>, 165 F. App'x 212, 215 (3d Cir. 2006) (citing <u>Daring Heckler</u>, 727 F.2d 64, 70 (3d Cir. 1986)); <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).

If faced with conflicting evidence, however, the Commissioner "must adequately explain in the record his reason

for rejecting or discrediting competent evidence." Ogden v.
Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v.
Heckler, 786 F. 2d 581 (3d Cir. 1986)). Stated differently,

> [U]nless the [Commissioner] has analyzed all evidence and
> has sufficiently explained the weight he has given to
> obviously probative exhibits, to say that his decision is
> supported by evidence approaches an abdication of the
> court's duty to scrutinize the record as a whole to
> determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F. 2d 772, 776 (3d Cir. 1978) (quoting

Arnold v. Sec'y of Health, Ed. & Welfare, 567 F.2d 258, 259 (4th

Cir. 1977)) (internal quotations omitted); see also Guerrero v.

Comm'r, No. 05-1709, 2006 WL 1722356, at *3 (D.N.J. June 19,

2006) ("The ALJ's responsibility is to analyze all the evidence

and to provide adequate explanations when disregarding portions

of it."), aff'd, 249 F. App'x 289 (3d Cir. 2007).

　　While the Commissioner's decision need not discuss "every

tidbit of evidence included in the record," Hur v. Barnhart, 94

F. App'x 130, 133 (3d Cir. 2004), it must consider all pertinent

medical and non-medical evidence and "explain [any]

conciliations and rejections, Burnett v. Comm'r 220 F.3d 112,

122 (3d Cir. 2000). See also Fargnoli, 247 F.3d at 42 ("Although

we do not expect the [administrative law judge] to make

reference to every relevant treatment note in a case where

claimant...has voluminous medical records, we do expect the ALJ,

as the fact finder, to consider and evaluate the medical

evidence in the record consistent with his responsibilities under the regulation and case law.").

In addition to the "substantial evidence" inquiry, the reviewing court must also determine whether the ALJ applied the correct legal standards.  See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 288 F.3d 259, 262 (3d Cir. 2000). The court's review of legal issues is plenary. Sykes, 228 F.3d at 262 (citing Schaudeck v. Comm'r, 181 F.3d 429, 431 (3d Cir. 1999)).

### "Disability" Defined

The Social Security Act Defines "disability" as the inability "to engage in any substantial gainful activity by reasons of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage I any other kind of substantial gainful work whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c (a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outline in 20 C.F.R. § 404.1520(a)(4)(i-v). In Plummer, 186 F. 3d at 428, the Third Circuit described the Commissioner's inquiry at each step of this analysis:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. §1520(a). If a claimant is found to be engaged in substantially activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

> In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. §404.1520 (c). If the claimant fails to show that [his] impairments are "severe," [he] is ineligible for disability benefits.

> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. §404.1520 (d). If a claimant does not suffer from a listen impairment or its equivalent, the analysis proceeds to steps four and five.

> Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform [his] past relevant work. 20 C.F.R. §404.1520(d). The claimant bears the burden of demonstrating an inability to return to [his] past relevant work. Adornao v. Shala, 40, F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume [his] former occupation, the evaluation moves to the final step.

> At this [fifth] stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. §404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [his] medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether [he] is

capable of performing work and is not disabled. See 20 C.F.R. §404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See Podedworny v. Harris, 745 F. 2d 210,218. 93d Cir. 1984).

## III. Analysis

The Plaintiff presents several separate issues for review to this Court, including whether the ALJ erred:

1) by misrepresenting the VE's testimony and failing to discuss or even mention the part of the VE's testimony that supports a finding of disability;

2) by failing to consider or analyze substantial evidence regarding the Plaintiff's very severe mental health limitations that strongly supported a finding that Plaintiff lacks the mental residual functional capacity to perform any type of substantial gainful activity;

3) by placing greater weight on the opinion of the Disability Determination Service's medical consultant than the opinions from treating sources and consultative exam psychologist Dr. Arrington;

4) by finding that Plaintiff did not meet Listings 12.02, 12.04, or 12.06;

5) in misrepresenting the timing and extent of Plaintiff's education; and

6) by failing to discuss Plaintiff's counsel's post-hearing request for consultative I.Q. test.[2]

In addition to the above, Plaintiff further argues that if the case is to be remanded, it should be assigned to a different ALJ due to serious errors committed by the ALJ.  The Court will address each argument in turn.

---

[2] To the extent Plaintiff raised any new arguments for the first time in his reply brief, this Court need not consider such arguments.  Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp., 26 F.3d 375, 398 (3d Cir. 1994)("An issue is waived unless a party raises it in its opening brief, and for those purposes 'a passing reference to an issue . . . will not suffice to bring that issue before this court.'").

1) <u>The VE's testimony</u>

Plaintiff contends that in the ALJ's decision, the ALJ misrepresented the VE's testimony and "failed to discuss or even mention the part of the [VE's] testimony that supports a finding of disability . . . ."  Pl's Br. at 32.  Plaintiff points to the VE's testimony that, "based on the testimony [of Plaintiff], it would appear that . . . given how he testified, it would preclude all competitive employability on a sustained basis." (R. 94).  On redirect examination, the ALJ asked the VE, "What particular testimony or signs or symptoms were you crediting there in finding preclusion in your last opinion?" (R. 94).  The vocational expert responded, "The testimony indicated that when individuals would make statements that he felt were derogatory in nature and that the reaction was excessive to the point where that behavior was displayed on a continuous and persistent basis. That would preclude all full-time employability in the work force." (R. 95).

Plaintiff argues that this testimony was not an answer to the hypothetical but rather was because the expert "actually believed that [Plaintiff] was unable to successfully perform any type of SGA due to his history of highly inappropriate on the job behavior."  Pl.'s Br. at 33.  The Plaintiff further contends that the ALJ failed to discuss the specific testimony upon which

20

this VE opinion relied - e.g., instances during previous employment where Plaintiff would react violently to name-calling by co-workers.  There is no finding that such testimony is not credible.  The Plaintiff deems this a failure by the ALJ to appropriately address the evidence of record without an explanation.

In response, the Defendant argues that the VE testimony on which Plaintiff relies was given in response to Plaintiff's hypotheticals and included limitations not found in the ALJ's RFC finding.  Thus, the Defendant contends that the VE's testimony, relied upon by the ALJ, was based on a hypothetical that properly specified only those limitations supported by the record.  Defendant contends that Plaintiff argues that the ALJ should have adopted hypotheticals based on uncorroborated restrictions.

This Court finds that a remand is appropriate on this issue because the ALJ did not adequately address the VE's conclusions based on Plaintiff's hearing testimony and did not address the Plaintiff's testimony regarding his limitations with respect to his behavior during past jobs.  During the hearing, Plaintiff testified that he would react excessively on a continuous basis when individuals would make statements that he felt were derogatory.  There is no discussion in the ALJ's opinion explaining why the ALJ rejected this part of the Plaintiff's

21

testimony, despite the lengthy discussion during the hearing of Plaintiff's behavior during prior jobs.  It is well established that "[t]he ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." Plummer, 186 F.3d at 429 (internal citations omitted).  While an ALJ need not discuss "every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004), an ALJ errs by failing to address evidence in direct conflict with his findings. Landeta v. Comm'r, 191 F. App'x. 105, 110 (3d Cir. 2006).

Certainly, a hypothetical must only include impairments that are supported by the record.  Dismuke v. Comm'r of Soc. Sec., 309 Fed. Appx. 613, 618 (3d Cir. 2009).  While the ALJ may very well reach the same conclusion on remand based on the evidence of record, this Court is unclear as to why the ALJ discounted Plaintiff's testimony regarding acting out violently in previous jobs and the VE's related conclusion that a person who behaved in such a way would "preclude all full-time employability in the work force." (R. 95).  Because the ALJ did not discuss the credibility of Plaintiff's testimony as to this issue, the basis for the ALJ's determination needs clarification and the Court cannot say at this juncture that a remand is not warranted on this basis.  Cf. id. (finding that ALJ properly rejected answer by vocational expert in response to plaintiff's

hypothetical that included limitations "not supported by the objective medical record <u>and regarding which the ALJ found [plaintiff's] testimony not fully credible</u>.")(emphasis added). Therefore, this Court will remand to the ALJ for a more thorough explanation as required under the applicable standard.[3]

2) <u>Medical Opinion Evidence</u>[4]

Plaintiff's next several arguments are interrelated with respect to the ALJ's evaluation of the relevant medical opinion evidence.  Plaintiff contends that the ALJ erred by:

- Failing to consider evidence of severe mental health limitations in the reports of APN Stafford;
- Discounting portions of Dr. Arrington's report showing an inability to function and that support a finding of disability; and
- Placing greater weight on the opinion of the Disability Determination Service's medical consultant than the opinions from treating sources and consultative exam psychologist Dr. Arrington.

--------

[3] Per SSR 96-7p:

An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."

[4] This addresses Plaintiff's second and third arguments, which overlap.

This Court will review the parties' arguments with respect to these aspects of the medical opinion evidence and then will address the ALJ's conclusions in light of the applicable standards.

   i.  *APN Stafford*

Plaintiff argues that the ALJ incorrectly found that Plaintiff retains the mental RFC to understand, remember and execute simple instructions; maintain attention; sustain concentration, persistence and pace; and to have adequate interactions with others. (R. 24-25).  In making this RFC determination, he believes the ALJ wrongly discounted the November 3, 2011 Examination Report and January 19, 2012 Mental RFC form completed by Treating APN (meaning an Advanced Practice Nurse) Stafford of the Cumberland County Guidance Center.

The November 3, 2011 report states that Plaintiff will be unable to work from November 3, 2011 to December 31, 2012 due to major depression and anxiety disorder. (R. 713-714).  The January 19, 2012 Mental RFC form states that Plaintiff has a poor ability to make simple work-related decisions; respond appropriately to supervision, coworkers and usual work situations; to maintain attention and concentration; to deal with work stresses; behave in an emotionally stable manner; to understand, remember and carry out simple instructions.  (R.

569-570).  Plaintiff contends that the ALJ improperly discounted Stafford's findings.

In his opinion, the ALJ rejected the findings because Stafford marked "'Poor' without rationale." (R. 24).  In the medical/clinical findings section, Stafford lists "psychiatric assessment" and "past history," but the ALJ found that Stafford "does not have the credentials to give a psychiatric assessment, and his assessment is inconsistent with the treating records and the claimants activities of daily living." (R. 24).

The Plaintiff argues that failure to consider Stafford's opinion is clear error because the applicable regulations allow evidence from nurse-practitioners to be considered.  He further argues that discounting the opinion unfairly penalizes Plaintiff because the Cumberland County Guidance Center assigns medication management to APNs.  While Plaintiff concedes that Plaintiff treated primarily with APN Higgins, and not APN Stafford, Stafford's opinion is the official statement from the Cumberland County Guidance Center.  Plaintiff argues that Stafford's Mental RFC opinion is consistent with his treatment records and activities of daily living.

Defendant contends that Stafford is not an acceptable medical source who can provide a medical opinion; Stafford is a non-treating source because there was no ongoing treating relationship required by 20 C.F.R. §416.902, and Plaintiff saw

Stafford only twice.  Defendant further argues that the ALJ does
not have to consider APN Stafford's report because it was not
supported by relevant evidence; specifically, the ALJ noted that
Plaintiff only appeared to seek care when he needed welfare
paperwork and rarely sought treatment.  (R. 24).  In addition,
Stafford's report was a form report – i.e., only a check box or
fill in the blank report – which is "weak evidence at best."
See Mason v. Shalala, 994 F.3d 1058, 1065 (3d Cir. 1993).

    ii.  *Dr. Arrington*

    Plaintiff also avers that Dr. Arrington's report is
consistent with Stafford's opinion, in that she found that his
psychiatric problems "may significantly interfere with the
claimant's ability to function on a daily basis." (R. 503).
Plaintiff claims that the ALJ erred in assigning this portion of
Dr. Arrington's opinion "little weight."  In addition, while Dr.
Arrington found that Plaintiff was able to follow and understand
simple instructions and perform simple tasks independently,
which the ALJ gave great weight, several other findings support
disability – i.e., Arrington's findings that Plaintiff had
fluctuating attention and concentration, along with impaired
recent and remote memory.

    With respect to Dr. Arrington, the Defendant argues that
the ALJ properly granted the portions of that opinion little
weight, which state that Plaintiff's psychiatric problems might

significantly interfere with his ability to function on a daily
basis because such findings are inconsistent with the findings
of Dr. Burakgazi, treatment notes from Bayside Prison and Dr.
Jusino-Berrios', the State medical consultant, findings.
Moreover, Defendant avers that the ALJ's finding was correct
because even Dr. Arrington found that Plaintiff could perform
some simple tasks independently, follow and understand simple
direction and maintain a schedule.  (R. 503).

    *iii. Treating Source Opinions*

    Finally, the Plaintiff argues that the ALJ erred in placing
greater weight on the opinion of the Disability Determination
Service's medical consultants than opinions from APN Stafford
and Dr. Arrington. Plaintiff contends that neither Dr. Jusino-
Berrios nor the reviewing physician, Dr. Castillo-Velez, ever
actually examined the Plaintiff.  In giving these opinions
greater weight, the ALJ is alleged to have violated the rule,
which states that treating source opinions are generally
entitled to a great deal of deference, and that the ALJ erred by
rejecting the opinions of the sources that are not "acceptable
medical sources" without evaluating the factors discussed in SSR
06-03p.[5]  Moreover, the Plaintiff argues that nearly 200 pages

---

[5]   Per SSR 06-03p, factors include:

were submitted to the record between the date of the opinions of Drs. Jusino-Berrios and Castillo-Velez and the ALJ's decision. Thus, their opinions are entitled to little weight.

Defendant responds by arguing that the ALJ's determinations are correct, as the opinions of Drs. Jusino-Berrios and Castillo-Velez are consistent with the record as a whole, and the opinion of State agency consultants should be given great weight if supported by medical evidence of record.

---

The examining relationship between the individual and the "acceptable medical source";

The treatment relationship between the individual and a treating source, including its length, nature, and extent as well as frequency of examination;

The degree to which the "acceptable medical source" presents an explanation and relevant evidence to support an opinion, particularly medical signs and laboratory findings;

How consistent the medical opinion is with the record as a whole;

Whether the opinion is from an "acceptable medical source" who is a specialist and is about medical issues related to his or her area of specialty; and

Any other factors brought to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an "acceptable medical source" has, regardless of the source of that understanding, and the extent to which an "acceptable medical source" is familiar with the other information in the case record, are all relevant factors that we will consider in deciding the weight to give to a medical opinion.

*iv.  Applicable Standard and Conclusion*

SSR 96-2p states, in relevant part: "If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; <u>i.e.</u>, it must be adopted."  That said, an ALJ must consider every medical opinion and decide how much weight to give the opinion. 20 C.F.R. § 404.1527(c).  An ALJ must accord "[t]reating physicians' reports . . . great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."  <u>Plummer</u>, 186 F.3d at 429 (internal citations omitted).

The ALJ must also consider the findings and opinions of state agency medical consultants and other sources consulted in connection with ALJ hearings. 20 C.F.R. § 404.1527(e)(2)(i).  If non-examining medical source opinions are supported by medical evidence in the record, they may constitute substantial evidence and override a treating physician's opinion. <u>Alexander v. Shalala</u>, 927 F. Supp. 785, 795 (D.N.J. 1995), aff'd per curiam, 85 F.3d 611 (3d Cir. 1996).  "Such opinions are credited only to the extent evidence supports them [and] [c]rediting the view of a non-examining medical consultant instead of a treating source is sufficient only if the conflicting evidence is properly

considered and explained." Malone v. Barnhart, No. 05-2991, 2008 U.S. Dist. LEXIS 114168, *21 (E.D. Pa. Aug. 15, 2008).

Other sources may be used to determine the severity of the claimant's impairment and how it affects the ability to work. 20 C.F.R. §416.913(d). "Other sources include, but are not limited to [m]edical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists.)" 20 C.F.R. §416.913(d)(1). "Information from these 'other sources' cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03P (S.S.A. Aug. 9, 2006). The ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03P (S.S.A. Aug. 9, 2006).

Based on the review of the record as a whole, the Court finds that the ALJ's determinations with respect to the medical

opinions of record including APN Stafford, Dr. Arrington and the
State Medical Consultants are supported by substantial evidence.
While there are some conflicts between the findings of APN
Stafford and Dr. Arrington and the remaining evidence of record,
including records from Bayside Prison, Cumberland County
Guidance Center, Dr. Burakgazi, and the state agency reviewing
consultants, the ALJ sufficiently addressed those conflicts and
the opinion of APN Stafford.  For example, the ALJ explained
that while Stafford marked several categories as "poor" he did
so with no explanation and that Plaintiff's activities of daily
living undermined much of his findings.  The ALJ noted that the
mental health records showed Plaintiff had been "stable and
repeatedly assessed as calm and relaxed with no overt evidence
of distress or impairment." (R. 22).  The records showed that
Plaintiff had denied having problems and the ALJ found that
there was "no readily observable signs of tension or agitation"
to support Plaintiff's claims of distress from anxiety. (R. 22).

The ALJ also determined that Plaintiff had given
conflicting statements to different medical professionals when
providing his past psychiatric history, and noted that Plaintiff
was given no work restrictions after his examinations from the
Department of Corrections on February 6, 2009 and April 13,
2010. (R. 22).  The ALJ also referred to the findings of Dr.
Arrington, which noted that Plaintiff could understand simple

instructions and directions vocationally and perform simple
tasks independently and could maintain a regular schedule and
the findings of Dr. Burakgazi (3/3 recall after 5 minutes) and
Bayside State Prison mental health records (knows current
president).  (R. 23).

Referring to the records from the Cumberland County
Guidance Center, the ALJ noted Plaintiff has had panic attacks
since release from prison, but has been prescribed anti-anxiety
medication with very limited therapy and medication monitoring
every three months to assess progress.  The ALJ found this to be
limited treatment in light of the severe symptoms the Plaintiff
alleges.  (R. 23).  He also stated that Plaintiff's claimed
cognitive and memory problems were not credible because
Plaintiff was able to list "all of his past anti-psychotic drugs
by memory by brand and generic names, accurately and
completely." (R. 24).  Importantly, the ALJ noted that the
treatment records show that Plaintiff has sought care primarily
when he needs welfare paperwork done and that the prison medical
records reflect that Plaintiff was concerned that he was not on
the mental health roster as "social security might be contacting
the mental health unit." (R. 1411).

Finally, while Plaintiff correctly argues that the
consultative physicians' opinions were rendered prior to a
completion of the entire record, particularly, the inclusion of

APN Stafford's opinions, this is not problematic as the ALJ
appropriately addressed Stafford's findings as discussed above.
Thus, remand is not warranted on this issue because the ALJ
considered the conflicting evidence and offered his rationale.
See Malone, 2008 U.S. Dist. 114168, at *21 ("Crediting the view
of a non-examining medical consultant instead of a treating
source is sufficient only if the conflicting evidence is
properly considered and explained.").  Therefore, the ALJ
appropriately considered all the evidence and has a reason for
discounting the evidence he rejects.  Johnson v. Comm'r of Soc.
Sec., 529 F.3d 198 (3d Cir. 2009).


   3) **Listings 12.02, 12.04, or 12.06**

   The ALJ determined that Plaintiff's impairments did not
meet or medically equal the severity of the listed impairments,
specifically 12.02[6], 12.04[7], or 12.06[8].  The ALJ also considered

---

[6] ***Organic mental disorders***: Psychological or behavioral
abnormalities associated with a dysfunction of the brain.
History and physical examination or laboratory tests demonstrate
the presence of a specific organic factor judged to be
etiologically related to the abnormal mental state and loss of
previously acquired functional abilities.

[7] ***Affective disorders***: Characterized by a disturbance of mood,
accompanied by a full or partial manic or depressive syndrome.
Mood refers to a prolonged emotion that colors the whole psychic
life; it generally involves either depression or elation.

[8] ***Anxiety-related disorders***: In these disorders anxiety is either
the predominant disturbance or it is experienced if the

whether "B" or the "C" criteria were satisfied.  Paragraph "B"
of Listings 12.02, 12.04, and 12.06 require that the claimant's
mental impairment result in at least two of the following:  (1)
marked restriction of activities of daily living, (2) marked
difficulties in maintaining social functioning, (3) marked
difficulties in maintaining concentration, persistence or pace;
or (4) repeated episodes of decomposition, each of extended
duration." 20 C.F.R. Pr. 404, Subpt. P, App. 1. Marked
limitations means "more than moderate but less than extreme." 20
C.F.R. Pr. 404, Subpt. P, App. 1.  "C" criteria requires a
medically documented history of a chronic organic mental
disorder of at least 2 years' duration that has caused more than
a minimal limitation of ability to do basic work activities,
with symptoms or signs currently attenuated by medication or
psychosocial support, and one of the following: (1) Repeated
episodes of decompensation, each of extended duration; or (2) A
residual disease process that has resulted in such marginal
adjustment that even a minimal increase in mental demands or
change in the environment would be predicted to cause the
individual to decompensate; or (3) Current history of 1 or more
years' inability to function outside a highly supportive living

---

individual attempts to master symptoms; for example, confronting
the dreaded object or situation in a phobic disorder or
resisting the obsessions or compulsions in obsessive compulsive
disorders.

arrangement, with an indication of continued need for such an arrangement.  Id.

Plaintiff asserts that in making these findings with respect to activities of daily living, the ALJ failed to mention both Dr. Arrington's consultative examination finding and the majority of Plaintiff's testimony. For example, Dr. Arrington found that Plaintiff reported that the results of the evaluation "appear to be consistent with psychiatric problems, which may significantly interfere with the claimant's ability to function on a daily basis." Moreover, during the hearing, Plaintiff testified as to several difficulties in the tasks of daily living and that the ALJ failed to discuss or even mention any of these limitations.

With respect to social functioning, Plaintiff faults the ALJ for a "cursory discussion" that ignored a large volume of evidence from APN Stafford, including his findings that Plaintiff had a "poor" ability in responding appropriately in work situations, Dr. Arrington's findings, including Plaintiff's negative reaction to crowds and panic attacks, and Mr. Harris' hearing testimony, including testimony regarding a violent incident in 2006 in which he nearly threw a coworker off a roof and an incident in 2007 wherein became extremely angry when a coworker insulted him. (R. 95).

Finally, as to concentration, persistence or pace, Plaintiff avers that the ALJ wrongfully ignored Dr. Arrington's report indicating serious limitations.  Moreover, Plaintiff contends that, in citing to Dr. Burakgazi's report with respect to concentration, persistence and pace, the ALJ ignores the portions of that exam wherein he diagnosed Plaintiff with "memory disturbance."  The Plaintiff also faults the ALJ for seemingly ignoring his hearing testimony with respect to his ability to remember his job functions.

The Defendant responds by arguing that in making the step three finding, the ALJ correctly found that Plaintiff was moderately limited in his activities of daily living based on his self-reported activities – e.g., Plaintiff was dressed and groomed appropriately, reported that he took out the trash and vacuumed and attended AA meetings.  With respect to social functioning, the ALJ's findings were supported by the fact that Plaintiff reported having a good relationship with his parents and had a girlfriend for several months.  As to concentration and pace, the mental status exams of record supported the ALJ's finding in that Dr. Arrington found Plaintiff could count, add, subtract, and could spell "world" forward and backward.  Dr. Burakgazi noted that the Plaintiff had good calculation skills and Dr. Brown found Plaintiff could focus and was able to name the current president.  The Defendant stresses that the ALJ did

not err in not discussing every piece of evidence rejected as an ALJ is not "required to mention every item of testimony presented to him . . . ." Def.'s Br. at 18.

While the Court finds the ALJ has supported his determination on activities of daily living and concentration, persistence and pace with substantial evidence, it agrees with Plaintiff to the extent he complains about the ALJ's cursory discussion of Plaintiff's difficulties with respect to social functioning.  More specifically, this Court finds that, similar to the issue raised with respect to the hypothetical posed to the VE, Plaintiff testified extensively during the hearing about his violent and aggressive behavior in prior jobs.  For example, Plaintiff testified that could not work around other people without becoming aggressive or violent, which is why he no longer worked at his previous employment. (R. 44).  He also testified that he would have hurt one of his coworkers. (R. 44).

In his opinion, the ALJ only cites Plaintiff's report that he has a good relationship with his mother and reported having a girlfriend to APN Stafford. (R. 20).  This fails to address the portions of his testimony that deal with his aggression towards co-workers, other than to mention that Plaintiff has "problems with mutual aggressiveness with co-workers." (R. 21).  While the ALJ cites the Plaintiff's DOC records to support the statement that Plaintiff "described being able to avoid and/or walk away

from situations and people that provoked his irritation," (R.22), he does not, however, address the conflict between the Plaintiff's testimony about his on the job behavior and the evidence in the record.

Thus, this Court agrees that the ALJ failed to properly assess the evidence with respect to Plaintiff's social functioning.  See Cotter, 642 F.2d at 705 ("[W]e need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.").  That said, this error, even if it were to be revisited on remand would seem to be of no impact in light of the fact that in order to satisfy the "paragraph B" the mental impairments must meet at least two categories, and, here, the ALJ's determinations with respect to activities of daily living and concentration, persistence and pace are supported by substantial evidence.

4) **Plaintiff's Educational Background.**

In his opinion, the ALJ determined that the Plaintiff passed his GED and obtained a Bachelor's degree in Theology after a motor vehicle accident in 1996, which marked the beginning of his cognitive problems.  Plaintiff argues, however, that he received these degrees prior to the 1996 accident.

Plaintiff contends that the ALJ also incorrectly stated Plaintiff received a paralegal certification.  While Plaintiff admits that he provided varying dates for his motor vehicle accident, he states that it is clear that the ALJ believed it occurred in 1995 or 1996, as those are the dates he refers to in his opinion.  Plaintiff contends that these incorrect findings are problematic because "it likely contributed to ALJ Timm's finding that Mr. Harris' testimony was not fully credible." (Pl.'s Reply Br. at 32).  In other words, the ALJ's belief that Plaintiff passed the GED and obtained his Bachelor's degree after his 1996 accident, rather than before, caused him to question the veracity of Plaintiff's claim that he has had severe cognitive problems since his 1996 accident.

Defendant points out that Plaintiff reported varying dates for the accident throughout the record, including 1993 through 1998 and that Plaintiff seeks to rely on a supplemental affidavit submitted over two months after the ALJ's decision with respect to the date and extent of his Bachelor's degree. (R. 320-321). Finally, the Defendant stresses that Plaintiff has not shown how the ALJ's misstatement has harmed him in light of the fact that the ALJ found Plaintiff only had at least a high school education at step five.

The ALJ did note in his opinion that the contradictions with respect to the accident and the dates of Plaintiff's

degree, "leaves the impression that the claimant has been less than wholly candid in his testimony." (R. 24). As this matter is being remanded for reasons already set forth above, and the ALJ will now have the Plaintiff's affidavit with respect to the dates of Plaintiff's education, the ALJ may review the record as a whole with the appropriate dates, which may or may not impact his credibility determinations on remand. To resolve any concerns, however, the ALJ should clarify the dates he uses in making his determination.

5) **Plaintiff's Request for a Consultative Examination**

Plaintiff complains that the ALJ erred in failing to explain why Plaintiff's counsel's post hearing request for consultative I.Q. test was denied. Plaintiff claims that given the alleged "brain damage, cognitive limitations and mental illness" (Pl.'s Br. at 61), that it was reversible error to fail to explain the denial of the consultative I.Q. test.

The Defendant points out that the ALJ has no obligation to seek additional evidence, and the decision of whether to order an additional examination is reserved to the Commissioner. See 20 C.F.R. §§416.917, 416.919a ("If we cannot get the information we need from your medical sources, we may decide to purchase a consultative examination."). Here, the ALJ determined that Plaintiff did not present sufficient evidence to raise a claim

that required further examination; thus, the ALJ was not
required to send Plaintiff out for a consultative examination.

   This Court agrees that the ALJ was under no obligation to
order a consultative examination or discuss his reason for not
doing so.  There is sufficient evidence of record for the ALJ to
make a determination as to whether or not the Plaintiff if
disabled.  While the matter is being remanded for a more
thorough explanation of the ALJ's reasoning, there is not a
dearth of medical evidence requiring a consultative exam.  <u>See</u>
<u>Struthers v. Commissioner of Soc. Sec.</u>, 1999 U.S. App. LEXIS
11102, at *7 (6th Cir. 1999)("Although an administrative law
judge is permitted to arrange a consultative examination where
the medical evidence of impairment is insufficient, 20 C.F.R. §
416.917, the regulations do not require an [administrative law
judge] to refer a claimant to a consultative specialist, but
simply grant him the authority to do so if the existing medical
sources do not contain sufficient evidence to make a
determination.")(internal quotations omitted).

   6) **Plaintiff's Remand Request**

   Finally, as part of his moving brief, the Plaintiff requests
that if the matter is remanded, it should be reheard by a
different ALJ as ALJ Timm made "serious errors."  The general
procedure, however, is to remand the matter to the same ALJ.
This Court, finding no allegations of bias or misconduct, deems

it appropriate to remand to the same ALJ. Cf. Valenti v. Comm'r of Soc. Sec., 373 Fed. Appx. 255, 258 (3d Cir. 2010)(discussing remand to a different ALJ where the original ALJ had engaged in coercive, intimidating, and irrelevant questioning of the claimant and had improperly interfered with the claimant's attempt to introduce evidence establishing disability).

IV.   Conclusion

For the reasons stated above, this Court will vacate the decision of the ALJ and remand.  An accompanying Order will issue this date.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated June 11, 2015